UNITED STATES of America, Plaintiff-Appellee,

v.

Evasio HERNANDEZ, a/k/a, Eduardo Gonzalez, Defendant-Appellant.

No. 77–5051.

United States Court of Appeals, Fifth Circuit.

June 16, 1978.

**1364**

Jeffrey S. Weiner, Miami, Fla., for defendant-appellant.

J. V. Eskenazi, U. S. Atty., R. Jerome Sanford, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, RONEY and FAY, Circuit Judges.

JOHN R. BROWN, Chief Judge:

After a jury trial Evasio Hernandez was convicted of conspiracy to possess marijuana with intent to distribute in violation of 21 U.S.C.A. §§ 841(a)(1), 846 (Count II of the indictment). The jury also convicted Hernandez of possessing marijuana with intent to distribute in violation of 21 U.S.C.A. § 952(a) and 18 U.S.C.A. § 2 (Count IV of the indictment). Hernandez was given a three-year sentence on each count with the terms running consecutively. On appeal Hernandez contends that his Fifth and Sixth Amendment rights were violated by a custodial police interrogation which produced inculpatory statements admitted into evidence at trial. We reverse the conviction.

### The Counts

On June 24, 1976, the government indicted Hernandez together with Norberto Acosta, Pedro Otto Ramirez, and Jose Pedro Perez. Count I of the indictment charged the four defendants with violating 21 U.S.C.A. §§ 952(a), 963 by conspiring to import marijuana. Count II of the indictment charged the defendants with conspiracy to possess marijuana with intent to distribute in violation of 21 U.S.C.A. §§ 841(a)(1), 846. Count III charged the defendants with transporting marijuana in violation of 21 U.S.C.A. § 952(a) and 18 U.S.C.A. § 2. Count IV charged the defendants with possession of marijuana with intent to distribute in violation of 21 U.S.C.A. § 841(a)(1) and 18 U.S.C.A. § 2. Count V charged that the defendants unlawfully carried and possessed firearms during the commission of the above marijuana related felonies in violation of 18 U.S.C.A. § 924(c).

On October 14, 1976, the four defendants appeared for trial. After the government rested, the motions of defendants Acosta and Ramirez for a severance were granted.[1] The case was submitted to the jury as to only defendants Hernandez and Perez. This appeal involves only Hernandez's conviction,[2] and we concentrate on those facts pertinent to appellant's constitutional claims.

### The Crime

On the evening of January 30, 1976, officer Robert Murrhee of the City of Coral

---

1. The District Court believed that testimony concerning incriminating statements made by Hernandez while in police custody violated the rights of Acosta and Ramirez and, consequently, that a severance was appropriate under *Bru-* *ton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476.

2. The jury found Perez guilty of all Counts except Count III.

Gables Police Department was on patrol in a water front area of the city called "Gables by the Sea". Officer Murrhee testified that he regularly patrolled the area. Shortly after midnight, January 31, 1976, he observed a Ryder Rental Truck backed up to the guard rail at Belle Vista Point, an area of dense mangroves and swamp adjacent to a canal and bay. The officer parked his patrol car, asked for a backup unit, and proceeded to the cab of the truck. Although no one was in the vehicle, he noticed the distinct odor of marijuana.

Approaching the rear of the truck, officer Murrhee heard the sound of several people running, possibly six or more, and he pursued them. As Murrhee ran he observed several large piles of marijuana, later determined to be an amount of approximately 23 tons. He ran until he reached a mangrove head and noticed three men lying down. He called, "halt, police", and all three lunged for him forcing him to fire a shot. Appellant Hernandez yelled, "I give up, don't shoot," and the three men came out with their hands up. Murrhee arrested the appellant along with the other two men, Acosta and Ramirez. Officer Murrhee detected a distinct smell of marijuana on their person.

Testimony about what transpired following Hernandez's arrest is often conflicting and confusing. Accordingly, before launching into a detailed description of the evidence, we briefly sketch the facts as disclosed by the uncontested portions of the record. The record clearly supports the trial judge's finding that the police gave Hernandez his *Miranda* rights[3] "on at least three occasions and perhaps four." It is equally clear that on each occasion Hernandez declined to speak thereby repeatedly invoking his right to remain silent. Hernandez first refused to speak immediately after his midnight arrest when officer Murrhee informed Hernandez of his *Miranda* rights. Approximately five hours later, after a lengthy confinement in a police wagon at the scene, Hernandez was transported to the police station where, according to the trial judge's findings, he again was given his *Miranda* rights and the police attempted to interrogate him at least two, and perhaps three times more. Within 45 minutes after his arrival at the station house the police succeeded in eliciting incriminating comments from Hernandez.

A more detailed investigation of the record reveals the following.[4] Officer Murrhee testified that he simultaneously gave all three suspects their *Miranda* warnings

3. *Miranda v. Arizona*, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. The warnings must inform the person in custody "that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706–07.

There is no controversy about the legality of the stop or the arrest. Similarly, there is no claim that the warnings given any time subsequent to the arrest did not fully comply with strictures of the *Miranda* opinion.

4. During the trial, and prior to the admission into evidence of the incriminating statements made by Hernandez, the District Court held an evidentiary hearing with the jury excused pursuant to 18 U.S.C.A. § 3501. That section in pertinent part states:

*Admissibility of confessions*

(a) In any criminal prosecution brought by the United States or by the District of Columbia, a confession, as defined in subsection (e) hereof, shall be admissible in evidence if it is voluntarily given. Before such confession is received in evidence, the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness. If the trial judge determines that the confession was voluntarily made it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances.

(b) The trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession, including (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5)

at the scene upon their arrest. Upon cross-examination, officer Murrhee affirmatively acknowledged that Hernandez declined to make any statement at that time.[5]. Hernandez, however, testified that he asked to see a lawyer after Murrhee gave him his rights. Hernandez then stated that there was no further conversation.

It is undisputed that the three suspects were then confined in a police wagon at the scene. Even though the station house was minutes away, the suspects remained confined in the close quarters of the police wagon for approximately five hours. After this lengthy confinement, Hernandez arrived at the station house about 5:00 a. m. in the morning.

According to Hernandez, shortly after he arrived at the station officer Murrhee again informed him of his rights and attempted to elicit conversation. During this interrogation, Murrhee asked whether Hernandez had a record. Hernandez responded that he was on three years probation. At that point Hernandez stated that, in exchange for cooperation, Murrhee offered "to try to keep me on probation because my probation officer was a Coral Gables police officer and he was going to try to do the best for me in court and on my probation." Hernandez testified that he again declined to talk and again requested counsel.[6]

The testimony by Hernandez about his second interrogation session went unchallenged. Officer Murrhee who had testified earlier, was not called upon by the prosecution to refute Hernandez's version of the facts.

Hernandez further testified that the police attempted yet another interrogation about 15 minutes after the second attempt. Hernandez stated that he was brought into a room occupied by an officer Maloy, officer Murrhee, and several other officers, he was again given his *Miranda* rights, and officer Maloy urged Hernandez to cooperate in exchange for help in Court. Hernandez testified that he again repeated his desire to see an attorney and said nothing more.

During his testimony, officer Maloy confirmed that he had interrogated Hernandez. He testified that he had first given Hernandez his *Miranda* rights, in both English and Spanish, and that Hernandez stated that he understood his rights.[7] Maloy also confirmed that several officers, including officer Murrhee, were present during the questioning session. Maloy admitted that he knew that Murrhee had previously given the *Miranda* warnings to Hernandez. Maloy further testified that he didn't know whether Hernandez had elected to give a statement or to remain silent. Similarly, officer Maloy did not know whether Murrhee had talked to Hernandez again between the midnight arrest and Maloy's interrogation.

Maloy testified that during this interrogation session Hernandez made certain incriminating statements. Hernandez admitted that he was hired by Luis Valdez to help unload some marijuana; that he didn't know Valdez well; that he was to receive $5,000 plus some marijuana for his help; and that Valdez just called him and asked if

whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.

The presence or absence of any of the above-mentioned factors to be taken into consideration by the judge need not be conclusive on the issue of voluntariness of the confession.

\* \* \* \* \* \*

(e) As used in this section, the term "confession" means any confession of guilt of any criminal offense or any self-incriminating statement made or given orally or in writing.

5. The following exchange between officer Murrhee and defense counsel took place during cross:

Q. Allright. Now, did Mr. Hernandez make any statements?
A. Nobody made any statements.
Q. Then, for the record, Evasio Hernandez declined to make any statement; is that correct?
A. Yes, sir.
6. Q. Allright. Anything further? Tell the Judge.
A. [Hernandez] And I said I wanted to talk to my lawyer. I didn't even cooperate with him then.
7. Although Maloy also gave the warnings in Spanish, there is no indication from the record nor is it argued on appeal that Hernandez was not conversant in English.

he wanted to make some money. Maloy maintained that there was no discussion about Hernandez's probationary status. Finally, Maloy testified that Hernandez, after making his oral statements, refused to sign a written statement and requested an attorney.

Hernandez testified that it was not until a fourth interrogation effort some 30 minutes after Maloy's interrogation that he finally answered questions. Hernandez stated that another officer approached him, gave him his rights, and induced him to speak through promises of leniency and nonrevocation of his probationary status. Even after giving his oral statements, Hernandez refused to sign a written statement. Hernandez testified that three or four officers, including officer Murrhee, were present at the session which produced the inculpatory statements.

After hearing the conflicting testimony, the District Court ruled that the oral statements would be admitted into evidence. In arriving at his decision, the District Court found as a fact that Hernandez was given his warnings on "three and perhaps four separate occasions by the police officers prior to finally making his admissions." Nevertheless, the Court ruled that the number of times Hernandez may have been warned prior to making statements was completely immaterial. "On the question of how many times a man was advised of his rights, the Court concedes that to be immaterial. . . . If he was advised of his rights ten times or twenty times or a hundred times, it cannot inure to his prejudice. It can only make him more fully aware of what his rights are. . . ."

The trial judge ruled that although he was concerned with the fact that Hernandez made his statements at 5:00 a. m., that fact alone, taking the time of the arrest into consideration, did not warrant suppressing the evidence. The District Court also noted that the inducements offered to Hernandez, if true, did not prohibit the oral statements from being admitted into evidence. "On the inducement factor the Court finds that that was not a matter that would fall within any of the proscriptions of the *Miranda* rule or [the law of voluntariness]." Finally, although the District Court made no express finding as to whether Hernandez had indeed requested counsel each time he invoked his right to remain silent, the Court's admissibility decision implicitly indicates that the Court found he had not exercised this right. The District Court found that the government met its burden under 18 U.S.C.A. § 3501. (See note 4, *supra*).

On appeal Hernandez argues that the police violated his Fifth Amendment *Miranda* safeguards. Appellant further contends that the police denied him his Sixth Amendment right to assistance of counsel. Accordingly, Hernandez maintains that his conviction should be overturned because the District Court failed to suppress the incriminating statements taken in violation of his constitutional rights.

### Self-Incrimination

The landmark decision of *Miranda v. Arizona*, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, delineated specific procedures to safeguard the Fifth Amendment privilege against self-incrimination during custodial interrogations. *Miranda*'s salutary prophylactic prescription was designed to combat the inherently coercive atmosphere of a police-dominated, in-custody interrogation. 384 U.S. at 467–68, 86 S.Ct. at 1624, 16 L.Ed.2d at 719–20.[8]

---

**8.** The *Miranda* decision was predicated upon the conclusion that "without proper safeguards the process of in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Miranda v. Arizona*, 384 U.S. 436, 467, 86 S.Ct. 1602, 1624 (1966); *see Hoffa v. United States*, 385 U.S. 293, 304, 87 S.Ct. 408, 414, 17 L.Ed.2d 374 (1966). The purpose of the detailed procedure fashioned by *Miranda* was to "give meaningful protection to Fifth Amendment rights," *Mathis v. United States*, 391 U.S. 1, 4, 88 S.Ct. 1503, 1505, 20 L.Ed.2d 381 (1968), by dispelling the "compulsion inherent in custodial surroundings." *Miranda v. Arizona*, 384 U.S. 436, 458, 86 S.Ct. 1602, 1619 (1966). Since the vice against which

■ Hernandez contends that the prophylactic safeguards of *Miranda* were violated by the repeated efforts of the police to interrogate him despite his refusal to speak. We cannot agree with the District Court's conclusion and the government's position on appeal that it is immaterial how many times a person is advised of his rights, and that it can only make the person "more fully aware of his rights." In the present case, an appraisal of the accused's rights preceded each attempt to initiate interrogation. The more times police inform a suspect of his rights in the face of his repeated invocation of one of those rights—the right to remain silent—the clearer it becomes that the police must not mean what they say. This is exactly the type of subtle coercive pressure which the *Miranda* opinion condemned.

■ Particularly in the circumstances of this case, Hernandez was ripened for influence by the inherent pressures attendant to a station house interrogation. Hernandez spent nearly five hours in the close quarters of the police wagon, where he was effectively held incommunicado without any possible access to an attorney. His arrival at the station house was in the early morning hours around 5:00 a. m., and the police immediately began repetitive efforts to elicit comment from him. He was given his

rights, he invoked his right to remain silent through his refusals to cooperate, he was given his rights again, and so on until he incriminated himself.[9] The inculpatory statements were secured without the benefit of assistance of counsel [10] in a room with more than three officers present, one of whom had on several prior occasions attempted interrogation. Such police conduct is tantamount to coercive pressure applied to the accused to force him to reconsider his invocation of his right to silence.

In *Michigan v. Mosley*, 1975, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313, the Supreme Court addressed the question which now confronts us under the express findings of the trial Court: under what circumstances is the prosecution prohibited from using a defendant's in-custody statement obtained by police who have renewed interrogation after the defendant has invoked his right to remain silent. The Supreme Court stressed that "[a] reasonable and faithful interpretation of the *Miranda* opinion must rest on the intention of the Court in that case to adopt 'fully effective means . . . to notify the person of his right to silence and to assure that the exercise of the right will be scrupulously honored . . . .'" *Mosley, supra*, 423 U.S. at 103, 96 S.Ct. at 326, 46 L.Ed.2d at 321. The Court also emphasized that the critical safeguard under *Miranda* was a person's "right to cut off questioning." [11] The Supreme Court concluded

the privilege against self-incrimination protects is compulsion, legal or factual, in the process of interrogation, *see Hoffa v. United States*, 385 U.S. 293, 303–304, 87 S.Ct. 408, 414 (1966); *United States v. Burr (In re Willie)*, 25 Fed.Cas. 38, 40 (No. 14692e) (C.C.D. Va.1807), the necessity for observance of the *Miranda* ritual depends upon whether compulsive factors are present in the circumstances under which question is conducted.

The "salient features" of the cases decided in *Miranda* were "incommunicado interrogation of individuals in a police-dominated atmosphere." *Miranda v. Arizona*, 384 U.S. 436, 445, 86 S.Ct. 1602, 1612 (1966). The *Miranda* procedures are intended to combat the effect which such a "compelling atmosphere," *id.* at 478, 86 S.Ct. at 1630, has upon the exercise of constitutional rights.
*United States v. Montos*, 5 Cir., 1970, 421 F.2d 215, 222, *cert. denied*, 397 U.S. 1022, 90 S.Ct. 1262, 25 L.Ed.2d 532.

9. The government in its brief concedes that Hernandez repeatedly invoked his right to re-

main silent: "the defendant could have elected, as he had done on *earlier occasions*, to remain silent." Government brief at 7 (emphasis added). Clearly, Hernandez's silence was in response to notice that he had the right to remain silent and that any statements he made would be used against him.

10. 18 U.S.C.A. § 3501, note 4, *supra*, specifically includes this as a factor to be considered by the trial judge in his determination of voluntariness.

11. In *Mosley* the Supreme Court pointed out that the resolution of the question turned almost entirely on the interpretation of the following single passage in the *Miranda* opinion, found at 384 U.S. at 473–74, 86 S.Ct. at 1627–28, 16 L.Ed.2d at 723·

Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At

that "the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning was 'scrupulously honored.'" *Mosley, supra,* 423 U.S. at 104, 96 S.Ct. at 326, 46 L.Ed.2d at 321. Although the facts of *Mosley* are distinguishable and make its result inapplicable here, the principles established and the analysis entertained in that case fully control Hernandez's *Miranda* contention.

*Mosley* teaches that a Court must adopt a case by case approach in determining whether, under the circumstance of each case, a resumption of questioning was consistent with scrupulous observance of the right to cut off questioning. In *Mosley,* for example, the Court found that Mosley's right to cut off questioning had been scrupulously honored. The Court based its conclusion on a number of factors, including: "[T]he police here immediately ceased the [initial] interrogation, resumed questioning only after the passage of a significant period of time and the provision of a fresh set of warnings, and restricted the second interrogation to a crime that had not been a subject of the earlier interrogation." 423 U.S. at 106, 96 S.Ct. at 327, 46 L.Ed.2d at 322.[12] In contrast, none of these factors existed in the present case.

After Hernandez arrived at the station house he was advised of his *Miranda* rights. He declined to answer questions. Almost immediately thereafter the police made a second effort to interrogate Hernandez.

Clearly, the police did not immediately cease the interrogation nor did they resume questioning after the passage of a significant period of time. Their acts were immediate, repetitive, and deliberate. The police focused their interest on only the crime involving the marijuana. They made absolutely no indication of a desire to restrict subsequent interrogation to crimes other than that which was the subject of the earlier attempted interrogation.

Within 45 minutes from the time he arrived at the station house, and perhaps after a third attempted effort to get Hernandez to speak within that period of time, the incriminating statement was elicited. It is patently obvious that the police ignored Hernandez's repeated invocation of his right to remain silent. The circumstances do not reflect a *scrupulous* honoring by police of Hernandez's right to cut off questioning. Officer Murrhee, who on two prior occasions had given Hernandez his *Miranda* warnings and witnessed his refusal to talk, was present at officer Maloy's interrogation session and yet failed to notify Maloy that Hernandez had twice before exerted his right to remain silent. Moreover, the police's peppering of Hernandez by repeatedly informing him of his rights despite his expressed desire to remain silent could only reinforce doubts in our minds or Hernandez's that the police meant what they said.[13]

Additionally, Hernandez testified that the police attempted to induce him to speak through promises of leniency and

---

this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked.
*Mosley, supra,* 423 U.S. at 100–101, 96 S.Ct. at 325, 46 L.Ed.2d at 319.

**12.** The following Courts have utilized the *Mosley* criteria: *United States v. Charlton,* 6 Cir., 1977, 565 F.2d 86 (right to cut off questioning not scrupulously honored); *United States v. Ford,* 9 Cir., 1977, 563 F.2d 1366 (right scrupulously honored); *United States v. Finch,* 8 Cir.,

1977, 557 F.2d 1234, *cert. denied,* 434 U.S. 927, 98 S.Ct. 409, 54 L.Ed.2d 285 (right scrupulously honored); *United States v. Olof,* 9 Cir., 1975, 527 F.2d 752 (right not scrupulously honored; *United States v. Mearns,* D.Del., 1978, 443 F.Supp. 1244 (right not scrupulously honored; *United States v. Matthews,* E.D.Pa., 1976, 417 F.Supp. 813 (right scrupulously honored); *United States v. Clayton,* E.D.Wis., 1976, 407 F.Supp. 204 (right scrupulously honored).

**13.** "To permit the continuation of custodial interrogation after a momentary cessation would clearly frustrate the purposes of *Miranda* by allowing repeated rounds of questioning to undermine the will of the person being questioned." *Mosley, supra,* 423 U.S. at 102, 96 S.Ct. at 326, 46 L.Ed.2d at 320.

nonrevocation of his existing probationary status. The District Court ruled that such inducement would not fall under the proscriptions of *Miranda*. Under the facts of this case, it is abundantly clear that any inducements might further aggravate the compulsive atmosphere of this situation.[14]

Finally, we are confronted with the District Court's failure to expressly resolve the conflicting evidence and make a clear ruling on Hernandez's assertion that he had simultaneously requested counsel each time he exerted his right to remain silent. In view of the District Court's implicit finding that Hernandez did not request counsel, a finding which the evidence reasonably supports,[15] we do not consider appellant's Fifth Amendment right to counsel claim. We emphasize, however, that if it had been determined that Hernandez indeed requested counsel simultaneously with the invocation of his right to remain silent, we would be faced with an even more egregious situation. Denial by authorities of an express desire for counsel is a serious matter which affects fundamental constitutional rights of the accused, and such a denial most certainly cannot make continued interrogation more honorable or less suspect.[16] In any case, the facts as found by the District Court unequivocally demonstrate that Hernandez's *Miranda* right to cut off questioning was not scrupulously honored.[17]

### Waiver

We have held that defendants may waive their constitutional privileges and make voluntary statements. *E. g., United States v. Brown*, 5 Cir., 1978, 569 F.2d 236 (en banc). "The standard to be applied in determining the question of [a] waiver under federal constitutional law is that the government must prove 'an intentional relinquishment or abandonment of a known right or privilege.'" *Brown, supra*, 569 F.2d at 238, *citing Johnson v. Zerbst*, 1938, 304 U.S. 458, 464, 58 S.Ct. 1019, 1028, 82 L.Ed. 1461,

14. Tactics urging the accused to cooperate and indicating that such cooperation will be called to the attention of the Court and law enforcement agencies, "standing alone" when employed prior to an accused's invocation of his rights, may be permissible. *United States v. Olof*, 9 Cir., 1975, 527 F.2d 752, 753; *United States v. Glasgow*, 9 Cir., 1971, 451 F.2d 557, 558.

15. "Since findings were not made, we uphold the ruling of the Trial Court if there is any reasonable view of the evidence to support it." *United States v. Montos*, 5 Cir., 1970, 421 F.2d 215, 219 n. 1, *cert. denied*, 397 U.S. 1022, 90 S.Ct. 1262, 25 L.Ed.2d 532.

16. "Although authorities at some point can resume questioning after a defendant has asked that questioning cease, so long as his or her 'right to cut off questioning [is] scrupulously honored,' whether authorities can resume questioning after a defendant has asked for an attorney is unsettled." *United States v. Herman*, 5 Cir., 1977, 544 F.2d 791, 796 n. 8 (citation omitted). Although this Circuit generally has set high standards in waiver cases, it is unclear whether a suspect may waive his once invoked right to counsel. *See, e. g., Government of Canal Zone v. Gomez*, 5 Cir., 1978, 566 F.2d 1289, 1291 (where a suspect requests counsel and the police ignore the request and continue interrogation, a waiver is "very difficult, if not impossible, to establish"); *United States v. Massey*, 5 Cir., 1977, 550 F.2d 300, 307, *citing United States v. Priest*, 5 Cir., 1969, 409 F.2d

491, 493 ("where there is a request for an attorney prior to any questioning . . . a finding of knowing and intelligent waiver of the right to an attorney is impossible"); *Biddy v. Diamond*, 5 Cir., 1975, 516 F.2d 118, 122, *cert. denied*, 425 U.S. 950, 96 S.Ct. 1724, 48 L.Ed.2d 194 (when a person has "exercised the right to counsel, talking with counsel, later voluntary admissions can constitute a waiver"). These questions appear to be pending before this Court en banc at this time in *Nash v. Estelle*, 5 Cir., 1977, 560 F.2d 652, *reh. en banc granted*, 560 F.2d 660. *See also United States v. Rodriguez-Gastelum*, 9 Cir., 1978, 569 F.2d 482 (en banc) (possibility of a voluntary waiver of right to counsel after a suspect initially requested counsel not precluded).

17. Section 3501 of Title 18 (see note 4, *supra*) requires that the District Court conduct a hearing out of the jury's presence to independently determine compliance with *Miranda* before a confession may be introduced to the jury. *United States v. Gonzalez*, 5 Cir., 1977, 548 F.2d 1185, 1190. Under § 3501, a "trial court's finding of fact, including its credibility determinations, on the question of the voluntariness of the statements must be sustained on appeal unless 'clearly erroneous' . . . ." *United States v. Maxwell*, 5 Cir., 1973, 484 F.2d 1350, 1352. Faithful to this standard, we differ with the District Court not on the facts but on the application of the law to those findings of fact.

1466.[18] In the present case, where the accused was repeatedly informed of his rights, we fail to find any substantial indication of waiver.

A "heavy burden" rests on the government to prove that Hernandez waived his privilege against self-incrimination. *Miranda, supra,* 384 U.S. at 475, 86 S.Ct. at 1628, 16 L.Ed.2d at 724; *Nash v. Estelle,* 5 Cir., 1977, 560 F.2d 652, 660, *reh. en banc granted,* 560 F.2d 660; *United States v. Guzman-Guzman,* 5 Cir., 1974, 488 F.2d 965; *United States v. Bailey,* 5 Cir. 1972, 468 F.2d 652, 660, *aff'd on reh. en banc,* 1973, 480 F.2d 518.[19] Also, Courts indulge in every reasonable presumption against waiver. *Brewer v. Williams,* 1977, 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424, 440; *Brookhart v. Janis,* 1966, 384 U.S. 1, 4, 86 S.Ct. 1245, 1246, 16 L.Ed.2d 314, 317. Furthermore, although the general rule is that neither a written nor an oral expressed waiver is required, *United States v. James,* 5 Cir., 1976, 528 F.2d 999, 1019, *cert. denied sub nom., Austin v. United States,* 429 U.S. 959, 97 S.Ct. 382, 50 L.Ed.2d 326; *United States v. Montos,* 5 Cir., 1970, 421 F.2d 215, 224, *cert. denied,* 1971, 397 U.S. 1022, 90 S.Ct. 1262, 25 L.Ed.2d 532, implied waivers are clearly disfavored. *Estelle v. Williams,* 1975, 425 U.S. 501, 515, 96 S.Ct. 1691, 1698, 48 L.Ed.2d 126, 137 (Powell, J., concurring); *Barker v. Wingo,* 1972, 407 U.S. 514, 525–26, 92 S.Ct. 2182, 2189–90, 33 L.Ed.2d 101, 114; *Johnson v. Zerbst,* 1939, 304 U.S. 458, 464, 58 S.Ct. 1023, 82 L.Ed.2d 1461, 1466.[20]

The possibility that Hernandez made an implied voluntary waiver of his right is greatly diminished by the fact that the police initiated each attempted interview, including the one at which the incriminating statements were elicited. *United States v. Menichino,* 5 Cir., 1974, 497 F.2d 935, 940; *United States v. Ramos,* 5 Cir., 1971, 448 F.2d 398, 399; *United States v. Clark,* 4 Cir., 1974, 499 F.2d 804, 807. Moreover, although the refusal of an accused at a later time to sign a written waiver (here in the form of a written statement of Hernandez's confession) does not automatically preclude the finding of a voluntary waiver, *United States v. James,* 5 Cir., 1976, 528 F.2d 999, 1020, *cert. denied sub nom., Austin v. United States,* 429 U.S. 959, 97 S.Ct. 382, 50 L.Ed.2d 326; *United States v. Hopkins,* 5 Cir., 1970, 433 F.2d 1041, 1044, *cert. denied,* 401 U.S. 1013, 91 S.Ct. 1252, 28 L.Ed.2d 550, in the present case such a factor is accentuated because the police, and not Hernandez, initiated all efforts at further conversation prior to Hernandez's refusal to sign. *See, United States v. Ramos,* 5 Cir., 1971, 448 F.2d 398, 399. Furthermore, there is no indication whatsoever from the record, other than the incriminating statements themselves, that Hernandez ever waived his rights.

---

**18.** *See also Brady v. United States,* 1970, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747, 756 ("waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences"); *Miranda, supra,* 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 707 (waiver must be "made voluntarily, knowingly and intelligently"); *Bonds v. Wainwright,* 5 Cir., 1977, 564 F.2d 1125, 1132 ("waiver must be an intelligent, understanding, and voluntary decision"); *United States v. James,* 5 Cir., 1976, 528 F.2d 999, 1019, *cert. denied sub nom., Austin v. United States,* 429 U.S. 959, 97 S.Ct. 382, 50 L.Ed.2d 326 (defendants made "voluntary and understanding implied waiver" of rights); *United States v. Watson,* 5 Cir., 1972, 469 F.2d 362, 363 ("no statement can indeed be 'voluntary' unless there is a finding of knowing and intelligent waiver").

**19.** Moreover, we have the concomitant prescription in this Circuit that the District Court's conclusion "that the confession is voluntary must appear from the record with unmistakable clarity." *United States v. Gonzalez,* 5 Cir., 1977, 548 F.2d 1185, *citing Sims v. Georgia,* 1967, 385 U.S. 538, 544, 87 S.Ct. 639, 643, 17 L.Ed.2d 593, 598.

**20.** "An express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver. But a valid waiver will not be presumed simply from the silence of the accused after [the] warnings are given or simply from the fact that a confession was in fact eventually obtained." *Miranda, supra,* 384 U.S. at 475, 86 S.Ct. at 1628, 16 L.Ed.2d at 724. *See, United States v. Blair,* 5 Cir., 1973, 470 F.2d 331, 338. The facts of Hernandez's case present a situation to which the quoted passage is particularly applicable.

 Finally, and most importantly, a *Miranda* transgression lessens the probability that rights were voluntarily waived. If the police may pursue interrogation three or four times until the accused confesses, then the concept of waiver would be woefully lacking in substance. We conclude that under the circumstances the Government did not adequately demonstrate that Hernandez waived his rights.

### Harmless Error

 We have held that an unlawful confession obtained by the interrogator's failure to observe *Miranda*'s procedural safeguards, while constituting damaging evidence against the accused, "may not be nearly as untrustworthy in determining the defendant's guilt or innocence, or nearly as shocking to our notions of fundamental due process, as an involuntary confession certainly is." *Smith v. Estelle*, 5 Cir., 1976, 527 F.2d 430, 431 (footnote omitted). More importantly, an unlawful confession may fall subject to the harmless error rule of *Chapman v. California*, 1967, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. Consequently, the erroneous admission of an incriminating statement, obtained through a failure to scrupulously honor Hernandez's invocation of his rights following a full *Miranda* warning, does not require reversal where the admission is harmless error in view of the overwhelming guilt of the defendant.[21]

 It is clear that Hernandez's incriminating statements were obtained in violation of *Miranda.* Because these statements carried extreme probative weight in relation to the crimes for which Hernandez was convicted, we cannot find their admission to be harmless beyond a reasonable doubt. Although there appears to be an ample basis to sustain the conviction,[22] we recognize that these incriminating statements may have represented overpowering, inescapable evidence for the jury. Strong as were the circumstances of presence at the scene of the truck and 23 tons of marijuana, the sudden flight to the mangrove head, and the lunge of these persons toward the officer, there was little, if any, direct evidence connecting Hernandez with the truck or the contents. We cannot conclude that the admission of these statements was harmless error.

In view of our disposition of appellant's *Miranda* claim, we need not reach his independent Sixth Amendment right to assistance of counsel claim. The admission in evidence of Hernandez's incriminating statements vitiates the judgment because it violated basic Fifth Amendment constitutional safeguards.

REVERSED.

---

**21.** *Smith v. Estelle*, 5 Cir., 1976, 527 F.2d 430, 432, cites an avalanche of cases which stand for this proposition, including: *Null v. Wainwright*, 5 Cir., 1975, 508 F.2d 340, *cert. denied*, 421 U.S. 970, 95 S.Ct. 1964, 44 L.Ed.2d 459; *United States v. Blair*, 5 Cir., 1972, 470 F.2d 331, *cert. denied sub nom.*, *Crews v. United States*, 1973, 411 U.S. 908, 93 S.Ct. 1536, 36 L.Ed.2d 197; *United States v. Hill*, 5 Cir., 1975, 430 F.2d 129. *See also, Milton v. Wainwright*, 1972, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (alleged involuntary confession to police officer posing as cell mate would be harmless in light of three previous valid confessions).

**22.** We have difficulty in understanding why the prosecution jeopardized the case by proffering a questionable confession unnecessary to establish guilt. Hernandez was captured at the scene of a major marijuana unloading operation. He had a distinct smell of marijuana on his person. When the police arrived at the scene he fled. He surrendered immediately when shots were fired in his direction. No doubt exists that Hernandez had possession of the marijuana. It is equally clear that one who has joint possession of 23 tons of marijuana possesses it for distribution. These were the crimes for which the defendant was convicted by a jury and the evidence, absent the confession, seems ample to support these convictions.