**Otha TAYLOR, Appellant,**

v.

**Walter RIDDLE, Superintendent, Appellee.**

**No. 76–2451.**

United States Court of Appeals, Fourth Circuit.

Argued May 6, 1977.

Decided Oct. 13, 1977.

---

4. The court permitted Strauss to introduce the report without requiring the psychiatrist to testify.

Sylvia L. Clute, Goochland, Va., for appellant [Court Appointed].

Jerry P. Slonaker, Asst. Atty. Gen., Richmond, Va. (Anthony F. Troy, Atty. Gen. of Virginia, Richmond, Va., on brief), for appellee.

Before RUSSELL, Circuit Judge, FIELD, Senior Circuit Judge, and WIDENER, Circuit Judge.

DONALD RUSSELL, Circuit Judge:

The petitioner-appellant, a state prisoner convicted of murder, seeks *habeas* relief, claiming that certain exculpatory statements made by him and admitted in evidence over his objection were obtained in violation of his *Miranda* rights. The District Court dismissed the petition. We affirm.

The crime of which the petitioner was convicted was singularly brutal. On Saturday, August 30, 1969, an eighty-five year old man, Samuel Campbell, was savagely beaten to death by blows on his head. When he failed to come as usual to his sister's home for Sunday dinner, the sister went to his house in order to ascertain the reason for his absence. She found his body in a pool of blood. Some of the blood had dripped through the floor into the basement below. There was no bed linen on his bed

but obviously at the time of his death the deceased was preparing to go to bed. The sister noticed blood spattered about the room. The bed linen was found in the room, bundled up and covered with blood. In the basement was a mop, which had blood on it, indicating it had been used in an attempt to wipe up the blood.

The petitioner lived in the house with the deceased. Witnesses placed him in the house during the Saturday of the murder. A search of his room at the house revealed the gun of the deceased, with blood all over it, under the pillow in the petitioner's room. Whether at this time or later, the petitioner's jacket, pants and socks were located, spattered with blood, is not clear. All of the blood on the petitioner's clothes and gun, as well as the blood on his fingernails, corresponded in type to that of the deceased.

A bulletin was issued by the law enforcement officers for the apprehension and arrest of the petitioner. He was arrested by a City Police Officer of Roanoke (Virginia) on September 1, 1969. No issue is raised of the propriety of petitioner's arrest. After he was arrested, the petitioner was promptly taken before the Judge of the Municipal Court, was given his *Miranda* warnings, and advised of the charges against him. No request for any information was made of him by the officers; nor did he say anything. Specifically, he made no request for counsel. Shortly afterwards the County Sheriff arrived at the municipal police station and custody of the petitioner was turned over to the Sheriff, who proceeded to place him in a patrol car for transportation to the county jail. When he was placed in the car, the Sheriff gave him again the *Miranda* warnings. The petitioner made no request for counsel, and made no statement of any kind. As they rode to the county jail, the Sheriff and the petitioner engaged in some general conversation but it was unrelated to the charges against the petitioner.

It is manifest that up to this point, the petitioner's *Miranda* rights had been scrupulously observed by the officers. There had been no coercion of any kind and no pressure to induce the petitioner to make any statement. After he had been brought to the county jail and while he was being processed, the Sheriff was called to the telephone in an adjoining room. While there, he was told by another officer that there appeared to be blood on the petitioner's fingernails. When the Sheriff returned to the processing room, he commented to the petitioner that there appeared to be blood on his fingernails.[1] His statement was phrased in the form of a simple declaration, not an interrogation, though he no doubt expected some response by the petitioner. The petitioner immediately proceeded to explain that he had gotten blood on his fingernails while he had been "attempting to help Mr. Campbell change the linen on his bed." He added that, despite the blood on Mr. Campbell and about the room, he went to bed when he was unable to locate any linen for the deceased's bed. The Sheriff then, in some amazement, said "[d]o you mean to tell me that you went to bed after seeing all the blood on Mr. Campbell?" The defendant answered, "[y]ou've done asked me a question I can't answer." Without any further attempt to inquire into the presence of blood on the accused's fingernails, the Sheriff turned to an entirely different subject and inquired about the deceased's gun found in petitioner's room, covered with blood. The petitioner's response was that he had taken the gun from under the deceased's pillow because of his fear that the deceased might shoot him with it. He added that Mr. Campbell was "all right when he left him to go to bed" and that he slept in his room all night thereafter, leaving the house the next morning without looking in on him.

The petitioner bases his claim to relief on the thesis that his exculpatory statements made during his conversation with

---

1. The Sheriff could, without violating any constitutional rights, have compelled the petitioner to submit to the removal of the blood from his fingernails for examination. *Cupp v. Murphy* (1973) 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900.

the Sheriff at the jail, were impermissible as violative of his *Miranda* rights. His position seems to be that an accused who remains silent, after being given his *Miranda* warnings, signifies his election to remain silent and may not thereafter be questioned in any way without proof of a clear intelligent and understanding waiver of his right to remain silent. The difficulty with the petitioner's argument lies in his position that waiver of the right to remain silent may not be implied from conduct but must be affirmatively declared. This argument is contrary to our ruling in *Blackmon v. Blackledge* (4th Cir. 1976) 541 F.2d 1070, 1072,[2] that where an accused is informed and understands his *Miranda* rights, and then submits to questioning without objection, he has waived his rights thereunder. That decision is in line with the decisions in other Circuits[3] and followed the ruling by the Supreme Court in *Michigan v. Mosley* (1975) 423 U.S. 96, 101–3, 96 S.Ct. 321, 46 L.Ed. 313.[4] Nor is there any magic, as the petitioner seems to assume, in the period of time between the giving of the *Miranda* warnings and the questioning. That again was made clear in *Michigan v. Mosley, supra.* The critical issue is, as Mr. Justice Stewart stated in *Mosley*, whether the "person's 'right to cut off questioning'" was observed.[5]

Certainly the admission of the first part of the petitioner's exculpatory statements was not violative of his *Miranda* rights. He had been silent after he had been given his *Miranda* warning, not once but twice. He made no request for an attorney; he did not indicate a desire to exercise his right to remain silent. When the Sheriff was told of the blood on the petitioner's fingernails, he commented to the petitioner on that fact. It was a natural comment under the circumstances. The petitioner had been arrested for murder. That murder was committed with a blunt instrument, resulting in a great loss of blood by the deceased. The presence of blood on the petitioner's fingernails necessarily excited the interest of the Sheriff. Perhaps in remarking on the presence of blood, the Sheriff expected, as we have said some reply from the petitioner. If he did, though, there was nothing improper in his comment. He could actually have phrased his comment in the form of a question; if he had done so, it would still not have been objectionable. The comment was clearly far less provocative of an answer than the statement of the police officers in *Mosley* that the defendant had been identified by a confessed confederate as the murderer, or the confrontation of the accused in *Blackmon* with a witness who accused Blackmon of the crime. The Sheriff's comment could only have become objectionable if the petitioner had responded by asserting a wish to remain silent and the Sheriff had immediately persisted in his questioning. *See Mosely, supra.* Nothing like this, however, occurred. The petitioner voluntarily offered his explanation. That explanation was manifestly admissible.

▪ The only question in the case arises in connection with the continued interrogation of the petitioner after he had stated that "[y]ou've done asked me a question I can't answer." It is the construction of that language that is pivotal to the decision

---

**2.** In that case, the Court said:

"* * * he [the accused] was reasonably questioned only after having been fully informed of his rights and permitted to make a telephone call. Under such circumstances, a suspect's submission to questioning without objection and without requesting a lawyer is clearly a waiver of his right to counsel, if, indeed, he understands his rights."

**3.** *See* cases cited by Justice White in his dissenting opinion in *Brewer v. Williams* (1977) 430 U.S. 387, at 397 n. 5, 97 S.Ct. 1232, at 1239, 51 L.Ed.2d 424.

**4.** *See* 423 U.S. at 102–3, 96 S.Ct. at 326. The rule there is even stronger than is required by the facts in this case:

"* * * Clearly, therefore, neither this passage nor any other passage in the *Miranda* opinion can sensibly be read to create a *per se* proscription of indefinite duration upon any further questioning by any police officer on any subject, *once the person in custody has indicated a desire to remain silent.*" (Italics added)

In this case, the petitioner has never "indicated [expressly] a desire to remain silent."

**5.** 423 U.S. at 103, 96 S.Ct. at 326.

here. Petitioner would construe the language as an invocation by him of his right to remain silent. If that language can be construed as an exercise by the petitioner of his right to remain silent, then the admission of the conversation which followed would have been error. Neither the Trial Court nor the District Court, however, regarded this statement as evidencing an exercise by the petitioner of his *Miranda* right to remain silent and an intention on his part to terminate the conversation. They found specifically that, "there [was] no indication that [the accused] was invoking his V Amendment right to silence when he made the statement" but was merely expressing "[a] simple inability to answer a question" or to offer an explanation for his conduct. This appears to us to be a perfectly reasonable construction of the petitioner's language. Moreover, the Trial Judge was in far better position, particularly in the light of the ready response the petitioner gave to the inquiry about the gun found under his pillow, to judge the petitioner's meaning and intentions than an appellate court. He observed the witnesses and had before him the complete record. We are not disposed to nor should we set aside a reasonable ruling on the construction of petitioner's language by the State Trial Court, as concurred in by the District Court. *Cf., Stone v. Powell* (1976) 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067, *reh. denied* 429 U.S. 874, 97 S.Ct. 197, 50 L.Ed.2d 158.

Finally, we would observe that, while the evidence did not include any eye-witness account of the murder, the circumstantial evidence of petitioner's guilt was overwhelming. His blood-spattered clothes, the blood on his fingernails, the possession of the deceased's gun covered with blood, his presence at or near the place and time of the murder, *even more important,* his statements to his sister-in-law which were substantially those made to the Sheriff during the challenged conversation which might well make the admission of his exculpatory statement to the Sheriff harmless, all pointed inescapably to the petitioner as the murderer. We, however, do not predicate our decision in any way on the overwhelming evidence of petitioner's guilt or on his statements to his sister-in-law. We rest our conclusions rather on the voluntariness of the challenged statements of the petitioner and on the waiver of his right to remain silent.

The decision of the District Court dismissing the *habeas* petition is accordingly

*AFFIRMED.*