**Jimmie Davis WATSON, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2-83-207-CR.**

Court of Appeals of Texas,
Fort Worth.

Sept. 4, 1986.

Discretionary Review Granted Dec. 3, 1986.

Douglas H. Parks, Dallas, for appellant.

Henry Wade, Crim. Dist. Atty., Gilbert P. Howard, Mark Nancarrow and Donald Land, Asst. Dist. Attys., Dallas, Robert Huttash, State Pros. Atty., Austin, for State.

Before FENDER, C.J., and JOE SPUR-LOCK, II, and CLYDE R. ASHWORTH (Retired, Sitting by Assignment), JJ.

## OPINION

JOE SPURLOCK, II, Justice.

Appellant, Jimmie Davis Watson, was convicted by a jury for the offense of burglary of a habitation. *See* TEX. PENAL CODE ANN. sec. 30.02 (Vernon 1974). The jury found the enhancement paragraph of the indictment was true, and the court sentenced Watson to 25 years imprisonment.

This Court reversed the judgment and remanded the case for a new trial based on error in the court's charge.[1] Subsequently, the Texas Court of Criminal Appeals reversed this Court's decision and held that the error in the court's charge was harmless.[2] The case is now before us for consideration of appellant's remaining grounds of error, numbers one through three and number five. For a complete discussion of the facts in this case, see the two previous opinions.

We affirm.

Appellant argues that (1) the trial court erred in overruling his motion for mistrial regarding testimony about an extraneous offense; (2) the evidence to support the judgment in the conviction used to enhance punishment was insufficient; and (3) the trial court erroneously refused a charge on circumstantial evidence. In ground of error number five, appellant argues that the trial court erred in admitting his oral inculpatory statements.

In order to review the first ground of error pertaining to the trial court's alleged error in overruling a motion for mistrial a short discussion of the circumstances leading to the motion is necessary.

At trial, two police officers testified about the circumstances of appellant's arrest that took place six days following the burglary for which he was on trial. The first officer said he saw appellant "jimmying" the door to a house and looking in the window. The second arresting officer said he removed a screwdriver from appellant's pocket. The officers compared the pry marks around the door with the width of the screwdriver and found that the width of the screwdriver was consistent with the marks on the door. Appellant did not object to this testimony.

Subsequent to this testimony, the State attempted, through the arresting officer, to introduce the screwdrivers found on appellant and his accomplice in this apparent

---

1. *Watson v. State,* 660 S.W.2d 882 (Tex.App.—Fort Worth 1983).

2. *Watson v. State,* 693 S.W.2d 938 (Tex.Crim.App.1985).

attempted burglary. When the State made its offer, appellant's counsel stated:

> To which we object. It's not only these items that they're offering, but the entire testimony of these last two witnesses is totally irrelevant to this trial. It's doing no more than attempt by the State to show an extraneous offense that has nothing to do with the case on trial.

Thereafter, a discussion was held at the bench, which was not recorded by the court reporter, and the court sustained the objection. Appellant requested that the jury "be instructed to disregard the State's offer." The court responded "[m]embers of the jury, disregard the last question and answer, please. Do not consider it for any purpose." Appellant moved for a mistrial, and this motion was overruled by the court.

On appeal, appellant urges that the court erred in allowing the testimony of the two officers and in overruling his motion for mistrial. He urges that all this evidence regarding the apparent attempted burglary, which occurred six days later than the instant offense and in the neighborhood of the instant offense, constituted evidence of an extraneous offense irrelevant to the case on trial; and that furthermore, any relevancy of such evidence was outweighed by its inflammatory and prejudicial potential. He argues that his "MOTION FOR HEARING ON ADMISSIBILITY OF ANY EXTRANEOUS OFFENSES", which was granted by the trial court prior to trial, somehow preserved the error for this court.

▮▮▮ The motion filed by appellant was, in essence, a motion in limine. *See* 7 M. MCCORMICK & T. BLACKWELL, TEX. CRIMINAL FORMS AND MANUAL sec. 43.23 (Texas Practice 9th ed. 1985). Reliance on a motion in limine will not preserve error; any remedy available with regard to a violation of a motion in limine is with the trial court. *Gonzales v. State*, 685 S.W.2d 47, 50–51 (Tex.Crim.App.1985), *cert. denied*, —— U.S. ——, 105 S.Ct. 2704, 86 L.Ed.2d 720 (1985); *Romo v. State*, 577 S.W.2d 251, 252 (Tex.Crim.App.1979);

*Brazzell v. State*, 481 S.W.2d 130, 131 (Tex. Crim.App.1972).

▮▮▮ Appellant did not timely object to the testimony of the two officers. An objection must be urged at the earliest opportunity for anything to be presented for appellate review. *Marini v. State*, 593 S.W.2d 709, 714 (Tex.Crim.App.1980). We note that the cautious trial judge instructed the jury to disregard the question and answer regarding the identification of the screwdrivers. Generally, an instruction to disregard will cure the error, if any. *Coe v. State*, 683 S.W.2d 431, 436 (Tex.Crim. App.1984). Furthermore, even assuming *arguendo* that appellant preserved error with regard to the testimony of the two arresting officers, we find that any error in allowing the jury to hear the officer identify the screwdrivers before objection was harmless beyond a reasonable doubt. *See Johnson v. State*, 660 S.W.2d 536, 538 (Tex. Crim.App.1983). Appellant's first ground of error is overruled.

In his second ground of error, appellant maintains that the State failed to produce sufficient evidence to prove the allegations in the enhancement paragraph of the indictment. The enhancement paragraph asserts that the appellant was duly and legally convicted of aggravated robbery in 1979, prior to the commission of the instant burglary.

Appellant stipulated at trial that he was the same person as the person convicted in the aggravated robbery case, but he argues that the proof of the aggravated robbery fatally varies from the indictment charging appellant with aggravated robbery. The indictment charged that appellant

> did ... while in the course of committing theft of current money of the United States of America, hereinafter called "the property" from Gustavo Cuello, with intent to obtain and maintain control of the property, using and exhibiting a deadly weapon, namely, a pistol knowingly and intentionally cause bodily injury to Gustavo Cuello.

The only evidence in the instant trial of the proof in the aggravated robbery case consists of a document, filed in the prior case, titled "WAIVER OF JURY–AGREEMENT TO STIPULATE–APPLICATION FOR PROBATION–WAIVER OF DELAY IN SENTENCING–WAIVER OF APPEAL". This document, signed in various places by appellant, reads in pertinent part:

I judicially confess that ... I did, while in the course of committing theft of current money, hereinafter called "the property" from Gustavo Cuello, with the intent to obtain and maintain control of the property, knowingly and intentionally cause serious bodily injury to Gustavo Cuello, as charged in the indictment.

■ The State proved up the prior judgment and sentence and identified appellant as the person convicted therein. As the State made a prima facie case against appellant, the burden then shifted to appellant to show such irregularities as would void the previous conviction. *Tinney v. State*, 578 S.W.2d 137, 139 (Tex.Crim.App. 1979).

■ The instant appeal involves a collateral attack on the aggravated robbery conviction. *See Acosta v. State*, 650 S.W.2d 827 (Tex.Crim.App.1983); *Berry v. State*, 582 S.W.2d 463 (Tex.Crim.App.1979). Although sufficiency of the evidence may not be collaterally attacked, this Court is permitted to consider, in a collateral attack, a claim that there was no evidence to support the guilty plea in the aggravated robbery conviction. *Ex parte Moffett*, 542 S.W.2d 184, 185 (Tex.Crim.App.1976). It may be true that the evidence before us demonstrates a variance between the proof and the indictment. However, the record before us and before the trial court did not contain a transcription of the court reporter's notes of the bench trial for the aggravated robbery. Without such transcription, appellant fails to support his inferred contention that there was no evidence to support the aggravated robbery conviction. *See Ex parte Dantzler*, 571 S.W.2d 536, 539 (Tex.Crim.App.1978) (opinion on reh'g); *Wolfe v. State*, 560 S.W.2d 686, 688 (Tex.

Crim.App.1978). Thus, we hold that appellant's ground of error is an impermissible collateral attack on the aggravated robbery conviction. *See Dantzler*, 571 S.W.2d at 539; *Wolfe*, 560 S.W.2d at 688. The second ground of error is overruled.

■ The third ground of error alleges that the trial court erred in failing to charge the jury on the law of circumstantial evidence. Appellant's oral confession was direct and complete proof that he was a party to the burglary. *See Taylor v. State*, 684 S.W.2d 682, 684 (Tex.Crim.App. 1984) ("Direct evidence directly demonstrates the ultimate fact to be proven, whereas circumstantial evidence is direct proof of a secondary fact which, by logical inference, demonstrates the ultimate fact to be proven.") Thus, a charge on circumstantial evidence was unnecessary. *See Marini*, 593 S.W.2d at 714. This case was tried before the rule in *Hankins v. State*, 646 S.W.2d 191, 197 (Tex.Crim.App.1983) (opinion on reh'g), was announced abolishing the requirement for a "circumstantial evidence" charge. Appellant's third ground of error is overruled.

In his fifth and final ground of error, appellant asserts that the trial court committed reversible error by admitting into evidence certain oral inculpatory statements made by appellant during several post-arrest interrogations by police officers. Appellant claims that these statements were not freely and voluntarily given.

The facts on the question of the voluntariness of appellant's statements made during his custodial interrogation were presented in a hearing outside the presence of the jury as required by *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) and TEX. CODE CRIM.PROC. ANN. art. 38.22, sec. 6 (Vernon 1979). At the conclusion of this *Jackson v. Denno* hearing, the trial court found that the oral inculpatory statements given by the appellant were freely and voluntarily made without coercion or duress. The trial court ruled that these statements were admissi-

ble evidence[3] and later provided written findings of fact and conclusions of law on this ruling as required by TEX. CODE CRIM.PROC.ANN. art. 38.22, sec. 6 (Vernon 1979).

▮ On appeal, challenges to the trial court's ruling regarding the voluntariness of a confession generally should be directed to whether the court abused its discretion in one of the findings or whether the court properly applied the law to the facts. *Sinegal v. State,* 582 S.W.2d 135, 137 (Tex. Crim.App.1979); *Trevino v. State,* 641 S.W.2d 626, 628 (Tex.App.—Corpus Christi 1982, pet. ref'd). In reviewing the trial court's findings, it must be remembered that at the hearing to determine the voluntariness of a confession, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony and as such, the court may believe or disbelieve all or any part of any witness's testimony. *See Hawkins v. State,* 660 S.W.2d 65, 72 (Tex.Crim.App. 1983); *English v. State,* 592 S.W.2d 949, 952 (Tex.Crim.App.), *cert. denied,* 449 U.S. 891, 101 S.Ct. 254, 66 L.Ed.2d 120 (1980).

The record reflects that appellant and an accomplice, Larry Jordan, were arrested on the evening of December 26, 1981, having been caught attempting to burglarize a habitation at 1517 Kingsbridge in Grand Prairie. On December 28, 1981, appellant was interrogated on four separate occasions by Detective Shaw and Officer Myer concerning an earlier burglary that had occurred on December 20, 1981 at the Perkins residence at 1509 Austrian, which is in the same neighborhood in Grand Prairie as

the attempted burglary. Officer Myer was the only witness to testify at the *Jackson v. Denno* hearing.[4]

The first interview between appellant and the two police officers was commenced sometime between 9:00 and 9:30 a.m. Officer Myer testified that he read appellant his *Miranda*[5] rights, and that appellant acknowledged that he understood those rights. Officer Myer also testified on direct examination that after appellant had confirmed his understanding of his rights, he indicated that he wished to speak with Officer Myer.[6] The first interview lasted about 30 to 45 minutes, during which time appellant sat silent throughout the interrogation. According to Officer Myer, the entire first interrogation consisted of questioning by Detective Shaw and himself, without any response from appellant. During this first interview, the appellant never asked for an attorney, and there is no evidence of any stated request by the appellant indicating a desire to cut off further questioning. After the first interview, appellant was returned to his cell, and at about 11:00 a.m. appellant was arraigned.

The second interrogation occurred about two and a half hours after the first interview, at approximately 1:00 p.m. The appellant did not initiate this second round of questioning and there is no evidence that he had indicated a desire to speak with Officer Myer. Officer Myer testified that he read appellant his *Miranda* rights again prior to this second interview and that appellant again acknowledged his understanding of these rights. The second interrogation lasted about 20 minutes, during

3. Under TEX. CODE CRIM.PROC.ANN. art. 38.-22, sec. 3(c), oral statements may be admissible in cases where they contain assertions of facts and circumstances found to be true and which conduce to establish the guilt of the maker, such as the directions to the stolen property in the case before us.

4. Detective Shaw was on vacation at the time of the trial and did not testify.

5. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

6. This testimony appears to contradict Officer Myer's affirmative response on cross-examina-

tion that after the *Miranda* rights were read prior to the first interview, appellant "refused to talk." It is likely, however, that Officer Myer in this answer was referring to appellant's silence during the first interview and not to the fact that appellant had initially indicated his willingness to submit to this first interrogation. In its order on the voluntariness of the appellant's statements, the trial court found that appellant had "indicated that he wished to speak to Officer Myer," and we believe that the evidence is sufficient to support this finding.

which the two police officers continued to ask questions about the burglary of the Perkins residence. Appellant was silent again during this interrogation and was returned to his cell between 1:15 and 1:30 p.m.

The third interview took place a little more than an hour and a half later, at about 3:00 p.m. As in the first two interviews, the *Miranda* rights were read and appellant acknowledged that he understood his rights. Though appellant did not initiate this third interrogation, he never asked for the presence of an attorney and never stated that he did not want to talk to the police officers during the third interview. For the first 15 to 20 minutes of questioning, appellant sat silent and did not respond to any of the officers' questions. At this point in the third interrogation, appellant suddenly told the two police officers that the person they were looking for was "the guy that was in the cell that had been brought in with him", referring to Larry Jordan. Appellant also told the officers that a watch taken during the Perkins burglary was among Larry Jordan's personal effects at the time they were booked into jail. The two police officers then returned appellant to his cell in order to question Larry Jordan concerning this accusation.

The two police officers interrogated Larry Jordan for about 45 minutes to an hour, confronting him with appellant's statement. During this interrogation, Larry Jordan stated that both he and appellant had executed the burglary of the Perkins residence together. Jordan told the officers that he and appellant had planned the burglary together with Jordan's brother, Michael. According to Larry Jordan, his brother had left before schedule and he and appellant arrived at the Perkins residence as his brother was leaving. Larry Jordan then claimed that appellant went into the Perkins residence and returned to the car with a stereo, cassettes, a microwave oven, and a watch.

Sometime after their interrogation of Larry Jordan, the two police officers questioned appellant again. The record does not reflect at what time this fourth interview took place, but it was on the same day, shortly after Larry Jordan had made his first statement. Officer Myer read appellant the *Miranda* warning for a fourth time and again appellant indicated that he understood his rights. At no time during this final interview did appellant indicate that he wanted an attorney present nor did he ever state that he did not want to talk.

The two officers explained to appellant that Larry Jordan had told them of appellant's involvement in the Perkins burglary, and at this point appellant began making the inculpatory oral statements that are the issue of this ground of error. Though appellant never stated that he actually participated in the burglary, he told the officers that he had knowledge of the burglary and was present, sitting in the car, when the Perkins residence was burglarized. During the interrogation, appellant specifically denied acting as a look-out. The appellant did, however, tell the police officers what was done with the stolen property and that he had helped to dispose of this property. That same night, appellant showed the police officers where the property was sold or stored and this property was recovered the next day.

In its Order on Voluntariness of Defendant's Oral Statements, the trial court ruled that the oral inculpatory statements made by appellant in his fourth interrogation were admissible into evidence. In its findings of fact, the trial court determined that appellant had been given his full *Miranda* warnings [7] on four occasions and that appellant had waived these rights voluntarily. The trial court also found that appellant "voluntarily and freely made such oral statements and admissions without compulsion or persuasion; and that defendant's rights are shown to have been scrupulously honored with respect to being questioned

---

**7.** The sufficiency of the *Miranda* warnings was never objected to at trial and this issue is not raised on appeal.

regarding said burglary offense and in making of said oral statements and admissions."

Although the argument advanced in his brief addressing this ground of error is very vague and overly general, appellant essentially makes a two-pronged attack on the admission of these inculpatory statements. In the first prong of his argument, appellant contends that "it is apparent that the appellant initially had exercised his constitutional right to remain silent by refusing to speak with the officer or answer any of his questions." In the second prong of his challenge, appellant asserts that as a result of this alleged exercise of his right to remain silent, "the interrogation should have ceased after the first interrogation session; and certainly, the questioning should not have continued after the second interrogation session." Appellant does not argue in this appeal that he was denied his right to counsel or that the *Miranda* warnings given were in anyway insufficient. The two issues in this case are whether the appellant's acts validly demonstrated a desire to exercise his right to cut off questioning and whether the police failed to scrupulously honor this right.

■ The first question to be addressed is whether the appellant's actual act of being silent after being advised of his rights and asked to make a statement is sufficient to indicate that appellant wished to remain silent and to cut off questioning. This is an issue of first impression in Texas. We hold that such a presumption is not required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that the meaning of an accused's muteness during questioning depends on the totality of the circumstances in each case.

The language in *Miranda* on the scope of the right to silence and the effect of its exercise is very broad:

Once warnings have been given, the subsequent procedure is clear. If the individual *indicates in any manner*, at any time prior to or during questioning that he wishes to remain silent, the interrogation must cease. [Footnote omitted.] At

this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked.

384 U.S. at 473–74, 86 S.Ct. at 1627–28, 16 L.Ed.2d at 723 (Emphasis added). The United States Supreme Court, however, has rejected literal interpretations of this passage in *Miranda* because any such interpretations would lead to "absurd and unintended results." *Michigan v. Mosley*, 423 U.S. 96, 102, 96 S.Ct. 321, 326, 46 L.Ed.2d 313, 320 (1975). As the Supreme Court in *Mosley* pointed out:

[A] blanket prohibition against the taking of voluntary statements or a permanent immunity from further interrogations, *regardless of the circumstances*, would transform the *Miranda* safeguards into wholly irrational obstacles to legitimate police investigative activity, and deprive suspects of an opportunity to make informed and intelligent assessments of their interests.

*Id.* (Emphasis added).

In the *Mosley* decision, the Supreme Court determined that the "critical safeguard" identified in the *Miranda* passage addressing the accused's right to silence is the accused's "right to cut off questioning." 423 U.S. at 103, 96 S.Ct. at 326, 46 L.Ed.2d at 321. As the Supreme Court in *Mosley* explained, it is "[t]hrough the exercise of his option to terminate questioning [that the accused] can control the time at which questioning occurs, the subjects discussed, and the duration of the interrogation." 423 U.S. at 103–104, 96 S.Ct. at 326, 46 L.Ed.2d at 321. The test established by the Supreme Court in *Mosley* to determine the admissibility of statements obtained after the person in custody has exercised his right to remain silent is whether the actions of the police in subsequent interroga-

tions demonstrate that the arrestee's right to cut off questioning was "scrupulously honored." 423 U.S. at 104, 96 S.Ct. at 326, 46 L.Ed.2d at 321.

The difficulty with the case before us is that appellant did not at any time make any explicit oral or written statement that he wished to remain silent or that he wanted to cut off the questioning in any of the four interrogations. The Supreme Court has not listed the ways by which an arrestee may indicate his desire to remain silent and cut off questioning nor said what constitutes sufficient indication by the suspect of a knowing and intelligent waiver of these rights.[8] No language in *Miranda* or its progeny provides that an accused's silence creates a presumption that the accused desires further interrogation to cease. The Supreme Court has recognized that silence by an arrestee following his receipt of *Miranda* warnings "is insolubly ambiguous." *Doyle v. Ohio*, 426 U.S. 610, 617, 96 S.Ct. 2240, 2244, 49 L.Ed.2d 91, 97 (1976); *United States v. Hale*, 422 U.S. 171, 176–77, 95 S.Ct. 2133, 2136–37, 45 L.Ed.2d 99, 104–105 (1975). Although the issue presented in *Doyle* and *Hale* was whether a defendant's post-arrest silence could be used against him at trial, the Supreme Court's observations on the difficulty in determining the meaning of a defendant's silence are applicable to the case before us.

Depending on the circumstances of a particular case, a suspect's act of remaining silent during a custodial interrogation might be as indicative of a desire to cut off questioning as it could be a failure to fully understand his right to terminate the interrogation. There are, however, many other possible motives and reasons for the silence or unresponsiveness of an arrestee during police questioning, including: (i) the suspect may be undecided as to whether to cooperate; (ii) the accused may be curious to see what evidence the prosecution already has and what the prosecution might be willing to offer to lessen the severity of the possible punishment in return for cooperation; and (iii) the individual may be formulating his alibi. *See Mosley*, 423 U.S. at 109, 96 S.Ct. at 329, 46 L.Ed.2d at 324, n. 1 (White, J., concurring). In *United States v. Hale*, Justice Marshall identified a number of other interpretations for a suspect's silence following his *Miranda* warnings:

> At the time of arrest and during custodial interrogation, innocent and guilty alike ... may find the situation so intimidating that they may chose to stand mute. A variety of reasons may influence that decision. In these often emotional and confusing circumstances, a suspect may not have heard or fully understood the question, or may have felt there was no need to reply. [Citation omitted.] He may have maintained silence out of fear or unwillingness to incriminate another. Or the arrestee may simply react with silence in response to the hostile and perhaps unfamiliar atmosphere surrounding his detention. *In sum, the inherent pressures of in-custody interrogation ... compound the difficulty of identifying the reason for silence.* [Footnote omitted.]

422 U.S. at 177, 95 S.Ct. at 2137, 45 L.Ed.2d at 105. (Emphasis added).

■ The conclusion to be drawn from this discussion is that an accused's act of remaining silent during custodial interrogation may be interpreted in a variety of ways and whether an accused's silence is indicative of his or her desire to cut off questioning will depend on the totality of circumstances apparent in each case. We hold, as has been concluded in several other jurisdictions, that "*Miranda* should not be read so strictly as to require the police to accept as conclusive any statement or act, no matter how ambiguous, as a sign

---

8. No matter what form a defendant's waiver takes, its voluntariness will be determined by the totality of the circumstances in a given case. *North Carolina v. Butler*, 441 U.S. 369, 374–75, 99 S.Ct. 1755, 1758, 60 L.Ed.2d 286, 293 (1979); *Thomas v. State*, 458 S.W.2d 817, 819 (Tex.Crim.

App.1970). The issue of whether appellant's silence, coupled with the totality of the circumstances of this case, constituted a knowing and intelligent waiver of his right to silence is fully addressed later in this opinion, *infra.*

that the suspect desires to cut off questioning." *State v. Woods*, 374 N.W.2d 92, 99 (S.D.1985); *State v. Perkins*, 219 Neb. 491, 495, 364 N.W.2d 20, 24 (1985); *People v. Roark*, 643 P.2d 756, 775 (Colo.1982) (Erickson, J., concurring in part, dissenting in part); *Lamb v. Commonwealth*, 217 Va. 307, 227 S.E.2d 737, 741 (1976); *see also State v. House*, 54 Ohio St.2d 297, 376 N.E.2d 588 (1978).

■ Once the *Miranda* warnings have been given, it is for the accused to indicate in any manner and at any time, prior to or during the questioning, that he wishes to remain silent. *United States v. Rice*, 652 F.2d 521, 527 (5th Cir.1981). Under certain circumstances, once a suspect has been fully informed of his rights, his mere silence or unresponsiveness to questioning is not sufficient indication of a desire to terminate the interrogation.

■ We hold that an arrestee has an affirmative obligation to explicitly state his objection to further questioning in those situations where (1) the accused has been fully informed of his *Miranda* rights, has indicated that he has understood these rights, and there is nothing in his background, experience, or conduct to suggest that he does not fully comprehend these rights, and (2) there is no evidence of coercion or undue pressure by the law enforcement authorities that would have shown that the accused was deprived of control of the interrogation. To hold otherwise would be to require that police interrogators make a separate determination of whether the suspect is attempting to exercise his right to cut off questioning each and every time the suspect fails to unambiguously respond to a question.

Appellant has failed to present any case in which an arrestee's mere silence during questioning has been held sufficiently indicative of his desire to cut off questioning

that the interrogation must be terminated. The only case cited by appellant in his fifth ground of error is *Autry v. State*, 626 S.W.2d 758, 764 (Tex.Crim.App.) (en banc), *cert. denied*, 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147 (1982). In *Autry*, however, the defendant had clearly exercised his right to cut off questioning by writing "I have nothing else to say" in a handwritten statement and the police failed to scrupulously honor this right by continuing their interrogation immediately after this written statement was made. *Id.* at 763–64.

The few cases in other jurisdictions that directly address this issue, however, have found as we have that the mere silence or unresponsiveness during an interrogation of a suspect who is fully aware of his rights does not require a termination of the interrogation. The United States Fifth Circuit Court of Appeals appears to have made a ruling similar to our holding on an accused's silence during custodial interrogation in *Howard v. Maggio*, 540 F.2d 1280 (5th Cir.1981). In this case, the Fifth Circuit found that a lengthy tape recorded interrogation containing inculpatory statements was admissible. The court found no merit in the appellant's argument that his silence and crying during the continued interrogation compelled a finding that he wished to terminate the interrogation.[9] *Id.* at 1281.

Another Fifth Circuit case, *United States v. Hernandez*, 574 F.2d 1362 (5th Cir.1978), appears to contradict this holding in its finding that the appellant had "invoked his right to remain silent through his refusals to cooperate." *Id.* at 1368. The *Hernandez* case, however, is not dispositive on this issue because the court was never required to rule specifically on the question of whether silence is indicative of an accused's right to cut off questioning.

---

9. In *Maggio*, unlike the case before us, the defendant signed a form waiving his *Miranda* rights. This distinction, however, is not critical, as such a signed written waiver only goes to the weight of the evidence on whether the accused understood his rights and knowingly and intelligently waived them. *North Carolina v. Butler*,

441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286, 292 (1979). Though the defendant in *Maggio* had waived his *Miranda* rights, he still had the right to cut off questioning at any time during the interrogation. *See Miranda v. Arizona*, 384 U.S. 436, 474–75, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694, 724 (1966).

In the *Hernandez* case, the government in its brief had conceded that the appellant had exercised his right to remain silent, *id.* at 1368 n. 9, and the court found the appellant's inculpatory statement inadmissable based on the clear failure of the police during their repeated interrogations of appellant to scrupulously honor his right to cut off questioning. *Id.* at 1368–69.

Our holding on an accused's silence during custodial interrogation is also in accord with the ruling of the United States Fourth Circuit Court of Appeals in *Taylor v. Riddle,* 563 F.2d 133 (4th Cir.), *cert. denied,* 434 U.S. 1020, 98 S.Ct. 744, 54 L.Ed.2d 768 (1977). In *Taylor,* the Fourth Circuit expressly rejected appellant's argument "that an accused who remains silent, after being given his *Miranda* warning, signifies his election to remain silent and may not thereafter be questioned in anyway without proof of clear, intelligent and understanding waiver of his right to remain silent." *Id.* at 136. The court in *Taylor* based its ruling on its earlier holding in *Blackmon v. Blackledge,* 541 F.2d 1070, 1072 (4th Cir.1976), that "where an accused is informed and understands his *Miranda* rights, and then submits to questioning without objection, he has waived his rights thereunder." [10] *Taylor,* 563 F.2d at 136.

The fact situation in *McClinnanan v. United States,* 454 A.2d 1340 (D.C.App. 1982), *cert. denied,* 464 U.S. 867, 104 S.Ct. 205, 78 L.Ed.2d 179 (1983), is closely similar to that of the case before us. In *McClinnahan,* before making his confession, the defendant was absolutely silent during his arrest and the following two interrogation sessions, with the exception of his statement to the interrogating officer at the end

of his first interview that he knew what his rights were and that he understood them. *Id.* at 1342. The first interrogation was 30 minutes long and was followed by an hour long investigation by a mobile crime lab technician of the blood on the defendant's hands and clothes. The second interrogation took place immediately after the crime lab investigation and lasted 45 minutes. During the first two interrogations, while the defendant sat mutely, the police officer was mainly trying to show the defendant the strength of the case they had against him. *Id.* The third interview was conducted by a different police officer who had dealt with the defendant before and was held almost immediately after the second interrogation. The defendant agreed to talk in the third interrogation and subsequently confessed. *Id.* at 1343–44. The Court of Appeals for the District of Columbia, in its ruling to admit the confession, found that:

> [A] total silence here by appellant, a calculating person sophisticated in the ways of police procedures [footnote omitted], cannot be deemed to have constituted an exercise by him of his right to remain silent and to terminate questioning; some affirmative action on his part was required to indicate he was indeed exercising his option under *Miranda* to terminate questioning so that the police would thereby be placed on notice that their questions should cease.

*Id.* at 1347.

Two other state supreme courts have also found that an accused's silence during custodial interrogation does not necessitate the termination of questioning. *See State*

---

**10.** The District Court in this same case also held that "[t]he actual act of being silent after being advised of one's rights and asked to make a statement does not necessarily indicate a desire or decision to remain silent." *Taylor v. Riddle,* 409 F.Supp. 631, 635 (W.D.Virg.1976). This court, however, attempted to limit any further police interrogation in situations where a request by the interrogators for a statement from the accused goes totally unanswered to a one time only "gentle probe" aimed exclusively at determining "whether the silence of the accused indicates a decided intention to so remain, or

whether it is a thoughtful silence, mulling over the merits of cooperation versus silence." *Id.* at 636. Such a restriction would have essentially required law enforcement officials to reread the *Miranda* warnings and obtain new waivers every time the accused failed to respond to a question. Though the judgment of the trial court was affirmed in this case, the Fourth Circuit court did not include any similar restriction on police interrogation in its ruling that an accused's silence does not necessitate the termination of interrogation. *See Taylor v. Riddle,* 563 F.2d at 135–36.

*v. House,* 54 Ohio St.2d 297, 376 N.E.2d 588 (1978); *State v. Perkins,* 219 Neb. 491, 364 N.W.2d 20 (1985). In *Perkins,* the Nebraska Supreme Court found the defendant's inculpatory statements to be admissible, even though the defendant was totally silent for about an hour and a half of police interrogation prior to making any statement. 364 N.W.2d at 23.

▇ In examining the circumstances of the case before us, we conclude that appellant's muteness during the first three interrogations with Detective Shaw and Officer Myer was not sufficiently indicative of any desire on his part to cut off questioning that the police officers should have been required to terminate any of these interviews. First, the record and the trial court's findings of fact reflect that prior to each of the four interrogations, appellant was read the *Miranda* warnings, and on each occasion appellant acknowledged that he understood his rights. Second, there is nothing in the record to indicate that appellant was incapable of understanding these rights or had somehow misunderstood his rights. Nor did appellant make any such claim either at trial or on appeal. In fact, the appellant's past criminal record indicates that appellant was no stranger to the criminal process.[11] Third, the record and the trial court's findings of fact reflect that there was no evidence of compulsion or undue pressure in any of the interrogations. Appellant never complained at trial or on appeal of any specific instances of compulsion or undue pressure. None of the four interrogations lasted longer than one hour and there is no evidence that appellant was denied either food, sleep, or access to restrooms prior to or during the day of these interrogations. Finally, the record indicates that the appellant had agreed to be interrogated prior to the first interview and that appellant never explicitly refused to submit to any of the four questioning sessions. Nothing in the record suggests that appellant was in any-way prevented from simply stating to the police officers that he did not want to be questioned further.

Based on the totality of the circumstances in this case, we find that the appellant had the burden of explicitly notifying the law enforcement authorities of any desire on his part to cut off questioning. As appellant never made such a stated request, the police authorities in this investigation were not obligated to terminate any of the four interrogations.

Though we have concluded that in the instant case appellant's total silence in the first three interrogations with Officers Shaw and Myer was not in and of itself an exercise by appellant of his right to remain silent and to terminate police questioning, we are still confronted with the question of whether under the circumstances of this case it may be concluded that appellant's statements in his third and fourth interviews were the product of a knowing and intelligent waiver of his *Miranda* right to remain silent. This is to say, if appellant's silence did not evidence his desire to terminate questioning, could such silence then be some evidence of a knowing and intelligent waiver of his right to remain silent?

Under the *Miranda* ruling, where "the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." 384 U.S. at 475, 86 S.Ct. at 1628, 16 L.Ed.2d at 724. The *Miranda* ruling also provides that "a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained." *Id.*

The United States Supreme Court has, however, ruled that waiver can be inferred from the actions and words of the interrogated based on "the particular facts and

---

11. At sentencing, the trial court found that the enhancement paragraph for an aggravated robbery conviction was true, and the court's 25-year sentence was cumulated with a 99-year sentence that appellant was serving for murder.

circumstances surrounding that case, including the background, experience, and conduct of the accused." *North Carolina v. Butler*, 441 U.S. 369, 374–75, 99 S.Ct. 1755, 1758, 60 L.Ed.2d 286, 293 (1979). Texas courts also hold that "waiver is to be determined from the totality of the circumstances." *Moreno v. State*, 511 S.W.2d 273, 276–77 (Tex.Crim.App.1974), *cert. denied*, 419 U.S. 1115, 95 S.Ct. 794, 42 L.Ed.2d 813 (1975); *Thomas v. State*, 458 S.W.2d 817, 819 (Tex.Crim.App.1970). According to the Supreme Court in *Butler:*

> [The statement in *Miranda* that mere silence is not enough to show waiver] does not mean that the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver, may never support a conclusion that a defendant has waived his rights.... in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated.

441 U.S. at 373, 99 S.Ct. at 1757, 60 L.Ed.2d at 292.

■ We find that appellant's silence, coupled with the totality of the other circumstances in this case, are sufficient to establish that appellant knowingly and voluntarily waived his right to silence during the four interrogations and at the time of making the inculpatory statements. The same factors used to determine whether appellant's silence constituted sufficient indication of an exercise of the right to cut off questioning are also considered in determining whether appellant knowingly and intelligently waived his right to silence. These factors restated are that: (1) prior to each interrogation, appellant received his *Miranda* warnings and acknowledged his understanding of these rights; (2) there is no evidence that appellant somehow misunderstood these rights; (3) there is no evidence of compulsion or undue pressure in these interrogations; and (4) though the appellant had the burden and the opportunity to cut off questioning, there was never any stated request to terminate these interrogations. The trial court in its findings of fact found that appellant knowingly, intelligently and voluntarily waived his rights

and this finding is supported by the evidence at the hearing and, we believe, by the totality of the circumstances in this case.

■ The second prong of appellant's argument in his fifth ground of error is that because of appellant's alleged exercise of his right to cut off questioning, the police officers should not have conducted any more interrogations after the first interview. Under *Michigan v. Mosley*, the test for the legality of repeated interrogations after an accused has properly exercised his right to cut off questioning is whether the law enforcement authorities "scrupulously honored" this right in reinitiating the interrogation at some subsequent time. 423 U.S. at 104, 96 S.Ct. at 326, 46 L.Ed.2d at 321. Because appellant's silence under the circumstances of this case did not constitute evidence of the exercise of his right to cut off questioning, the test in *Michigan v. Mosley* does not come into play.

■ We note, however, that even if the appellant had validly exercised his right to cut off questioning at some time in each of the first three interviews, we do not believe that the facts of the case surrounding the police officers' reinitiation of each of the four interrogations would have shown that these officers had acted contrary to the tenets of *Michigan v. Mosley*. In our view, the fact that the police gave new *Miranda* warnings before each interview, the significant amount of time allowed between each interrogation, and the lack of any evidence of coercion or undue pressure would have been sufficient to show that the police officers had scrupulously honored appellant's right to cut off questioning. *See Phillips v. State*, 701 S.W.2d 875 (Tex.Crim.App. 1985) (en banc) (confession admissible in case where there were three interrogations within 24 hours and only a two hour interlude between the second and third questioning session); *Cox v. State*, 644 S.W.2d 26 (Tex.App.—Houston [14th Dist.] 1982, pet. ref'd) (statement voluntary even though defendant questioned for about eight hours over two day period). This is

not a case where the law enforcement authorities failed to honor an accused's decision to remain silent by either refusing to discontinue interrogation or by persisting in repeated efforts to wear down his resistance and make him change his mind.

Under the particular circumstances of this case, we find that appellant's oral inculpatory statements were in fact freely and voluntarily given. The evidence supports the trial court's ruling that based on the totality of the circumstances these statements by appellant are admissible. Appellant's ground of error number five is hereby overruled.

The trial court's judgment is affirmed.